**THK AMERICA, INC., Plaintiff,**

v.

**NSK CO., LTD., and NSK Corporation, Defendants.**

**No. 90 C 6049.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 6, 1994.

John E. Kidd, John E. Daniel, Michael A. O'Shea and Jeffrey Sonnabend of Rogers & Wells, New York City, Robert E. Wagner, Alan L. Barry and James J. Jagoda of Wallenstein, Wagner & Hattis, Ltd., Local Counsel, for plaintiff THK American, Inc.; Chicago, IL, James E. Armstrong, III and Ken-Ichi Hattori of Armstrong, Westerman, Hattori, McLeland & Naughton, Washington, DC, of counsel.

Charles E. Miller and Robert Kunstadt, Pennie & Edmonds, New York City, for defendants, NSK, Ltd., and NSK Corp.

### ORDER

ROSEMOND, United States Magistrate Judge.

Before the Court is plaintiff THK America, Inc.'s *"Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery."* **The motion is granted. The *Stipulation* is enforced.**

Also before the Court is THK's *"Motion To Direct Defendants To Proceed With Settlement Discussions."* The motion is granted. The parties' settlement conference presently set for October 7th is hereby struck. THK is awarded its reasonable attorneys' fees incurred in connection with the filing of the motion.

According to *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* "THK asked NSK to stipulate to certain sales information ... relevant to the damages part of th[e] case."[1] "NSK responded that it would 'accept THK's proposed stipulated sales data', but only 'on condition that THK stipulate to vacate the sanctions awarded against NSK ... [and to] reimburs[e] NSK for all sums paid as sanctions and reinstat[e] NSK's use of the 'Attorneys' Eyes Only' designation.' "[2] More specifically,

NSK would accept THK's proposed stipulated sales data on condition that THK stipulate to vacate the sanctions awarded against NSK, as improvidently granted;

and Judge Norgle approves such stipulation. This would include reimbursing NSK for all sums paid as sanctions and reinstating NSK's use of the "Attorneys' Eyes Only" designation.[3]

\*   \*   \*   \*   \*   \*

*If THK is unwilling to accept NSK's offer, NSK is nevertheless agreeable to stipulate to the sales of the parties THK and NSK,* as soon as NSK's experts have concluded their checking of THK's computer data (which will probably be done this week).[4]

It should be noted that the sales information for which stipulation is sought is—according to THK—either "non-existent or *de minimis* and ... [therefore is] susceptible to stipulation."[5] Indeed, according to THK, "only two other companies besides THK and NSK have enjoyed substantial linear guide sales and, for one of them, this has only been true for the last few years."[6]

The stipulation proposed "is based in part on THK's linear guide sales and on data obtained from NSK in discovery which reflects NSK's linear guide sales."[7] At all relevant times, THK has been willing and prepared to make whatever reasonable adjustments in the sales data deemed appropriate by NSK.[8] No adjustments were ever suggested or proposed by NSK.

The *"Declaration of Robert M. Kunstadt,"* one of the attorneys for NSK, states that immediately upon his review of THK's *"Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* he "telephoned THK's counsel, Mr. John Daniel, to advise him that the

1. *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* at 1.

2. *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* at 1.

3. Exhibit A (NSK's August 1, 1994 letter to THK counsel), at 1, *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery."*

4. Exhibit A, at 2 (emphasis added).

5. *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* at 3.

6. *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* at 3.

7. *Id.*

8. *Id.,* at 5.

motion was improper in that, *inter alia,* it erroneously represented NSK's position as agreeing to THK's proposed third party sales data and it erroneously portrayed NSK's counteroffer as being conditioned almost exclusively on the payment of money to NSK."[9] Attorney Kunstadt's declaration states further that "[d]uring [his] telephone conversation with Mr. Daniel, [attorney Kunstadt] offered to compromise and resolve the issue *by stipulating to THK's proposed third party sales data* if THK agreed to vacate the sanctions imposed on NSK, even *without* the need for THK to return the $96,000 in attorneys' fees paid to THK."[10] *"Mr. Daniel declined to do so."*[11]

THK contends that NSK's conditioning of its acceptance of an otherwise acceptable Stipulation on the making of a cash payment by THK or some other unrelated condition is neither permitted by the federal rules of civil procedure nor the Ethical Considerations and Disciplinary Rules set forth in the Code of Professional Responsibility.[12] THK maintains that NSK's conduct in this regard is an "egregious" abuse of the discovery process.

Finally, THK notes that this litigation is now at the pre-trial order stage where issue-narrowing and stipulations are essential to the orderly structuring of the anticipated upcoming trial, and therefore in the interest of judicial economy the parties ought to stipulate to matters where they can. Where, as here, there appears to be no real disagreement concerning the acceptability of the matter for which stipulation is sought, it is improper to demand money from an adversary as a condition of acceptance. Stipulations in preparation of a pre-trial order are not cash items for sale.

Under the *"Standing Order Establishing Pretrial Procedure,"* "[c]ounsel for all parties are directed to confer *in person (face to face)*

at their earliest convenience* in order to . . . reach any possible stipulations narrowing the issues of law and fact. . . ."[13] Consistent with the Court's standing pretrial procedure order, THK has sought to narrow the various damages issues by proposing a stipulation covering certain sales information. The letter and spirit of the *Standing Order* of this Court dictates that NSK stipulate to facts to which it has no basis for objecting.

■ This is not a situation where a party is being forced to *enter into* a stipulation. Quite the contrary. The record reveals that the stipulation proposed was at all relevant times acceptable to NSK. The *only* reason proffered by NSK for not accepting THK's proposed stipulation was that NSK wanted its inappropriate "tagged-on" condition(s) accepted by THK. There was no objection by NSK to the accuracy of the facts set forth in the stipulation. No substantive objection to the nature, concept, or parameters of the stipulation was ever made by NSK. The conditions sought to be imposed are completely unrelated to the proposed stipulation. Accordingly, NSK has in fact accepted THK's stipulation since the conditions attached to NSK's acceptance of the stipulation constitute at worst blackmail and at best a gun-less hold-up.

More specifically, as noted earlier, the August 1, 1994 letter of NSK counsel to THK counsel *unequivocally* states that the THK proposed sales data stipulation is acceptable to NSK and will be adopted by NSK provided that THK accept a certain proposed condition. The proposed NSK condition has nothing to do with the accuracy or content of the THK proposed sales data stipulation. Indeed—contrary to NSK's contentions—it is completely unrelated to the THK proposed sales data. Accordingly, the proposed NSK

---

9. Exhibit F, at 1 and 2, *"NSK's Opposition To THK's Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery."*

10. Exhibit F, at 2.

11. *Id.*

12. THK maintains that it cites the Code not with the intention of suggesting that NSK counsel have violated the Code or should be disciplined.

It does so, instead, in order to demonstrate that NSK's attempt to condition its acceptance of the Stipulation is not consistent with the standards of propriety and decorum required of litigants and their counsel.

13. Rule 5(A) of the General Rules of the United States District Court for the Northern District of Illinois.

condition does not alter, revise, or amend in any way the THK proposed sales data stipulation. Thus, the THK proposed sales data was not only wholly susceptible to stipulation, but—*but for*—NSK's unrelated and unethical "tagged-on" condition would have been completely acceptable to NSK. In other words, NSK would have stipulated to the proposed sales data, *but for* its desire to impose a condition that was unrelated and otherwise improper. Indeed, as reflected by the above-referenced August 1st letter, even "[i]f THK [had been] unwilling to accept NSK's offer, *NSK [was] nevertheless agreeable to stipulate to the sales of the parties THK and NSK*, as soon as NSK's experts ... concluded their checking of THK's computer data...."[14] Accordingly, the proposed sales data was susceptible of stipulation, and consistent with the letter and spirit of the Court's *"Standing Order Establishing Pretrial Procedure"* should have been unconditionally accepted by NSK, except of course for any minor reasonable computational adjustments that may have been required. Therefore, notwithstanding NSK's contentions to the contrary, we conclude that NSK has in fact accepted the proposed stipulation of THK.

Alternatively, THK seeks leave of court to re-open discovery for the purpose of conducting the third-party discovery necessary for establishing the facts set forth in the proposed sales data stipulation. If the Court were to permit the proposed alternative, it would—*via* its inherent power—require NSK to fund the discovery since *no reason exists* for NSK's refusal to agree to the proposed stipulation—with the understanding of course that minor reasonable adjustments may have to be made. We decline to adopt this alternative proposal because such discovery would unduly delay the trial in this case, and, most importantly, in light of the fact that NSK has already accepted the stipulation, such discovery is completely unnecessary.

If the parties were endeavoring to settle the case, then bargaining for the return of the $96,000 in attorneys' fees would be appropriate. In settlement negotiations, the parties are free to use whatever bargaining chips they possess.

■ However, where possible, the parties are to stipulate so that factual and legal issues may be narrowed for trial.[15] The stipulations may not be unethically conditioned as NSK has sought to do here. Generally, if a litigant forces an opposing party to prove a matter capable of easy stipulation, he is required to reimburse that party for the expenses incurred in establishing that proof at trial.[16] A party should not be required to prove a matter that can be easily stipulated to. Although rejected by the Court, THK's proposed alternative is reasonable and consistent with the type of relief afforded litigants forced—unnecessarily—to prove matters to which the parties could easily stipulate.

We turn next to NSK's contention that "THK's arguments for more discovery *completely contradict* the arguments THK made a year ago in demanding a 'firm' discovery cut-off and a restriction on depositions."[17] This contention is without *any* factual basis, and NSK makes *no* effort to even camouflage it with one.

At the time in question, NSK opposed setting *any* discovery cut-off date—a completely unrealistic position to take. Initially, it sought to depose nineteen deponents, but when the issue became the subject of a briefing schedule, reduced its proposed deposition discovery to fifteen deponents.

14. Exhibit A, at 2, *"THK's Memorandum In Support Of Its Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery"* (emphasis added).

15. *See*, Rule 5(A) of the General Rules of the United States District Court for the Northern District of Illinois.

16. Even apart from the inherent power of the Court, Rule 37(c) of the Federal Rules of Civil Procedure authorizes issuance of an order requiring a party to pay the reasonable expenses incurred in making proof where a party has failed to admit, as requested, the truth of any matter.

17. *"NSK's Opposition To THK's Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* at 3.

Understandably, NSK's deposition discovery was unrelated to third-party sales data. NSK sought deposition discovery of THK personnel—of which much was duplicative and otherwise unnecessary. A glaring example of unnecessary NSK deposition discovery was NSK's efforts to depose Mr. Akihiro Teramachi, the son of Mr. Hiroshi Teramachi, Chairman of THK Japan, President of THK America, and founder of both corporations. Mr. Akihiro Teramachi attended *one* meeting wherein his father told several NSK executives and representatives to cease infringing his patent.[18] Assuming for the sake of argument only that Mr. Akihiro Teramachi had any knowledge relevant to the issues in the lawsuit such knowledge was at best duplicative and cumulative. *NSK already knew what was said at the meetings because it was present.* It had already deposed the father—several times. The son's connection with the lawsuit—if any—was peripheral. However, NSK's pursuit of the son made its deposition schedule suspect, and suggested that the purpose underlying the discovery was to vexatiously increase THK's litigation expenses, and unduly delay the progress of the case.[19]

Having a reasonably workable discovery schedule in place—even one subject to amendment—was a substantially better state of affairs than having no discovery schedule whatsoever and no discovery cut-off date—which would have been the state of things had NSK been successful in standing on its refusal to even propose a discovery cut-off date. And the arguments advanced by THK for a discovery schedule and a discovery cut-off date were valid then, and remain so.

Next, NSK argues that "THK's proposed stipulation shows that the fact discovery cut-off date was in reality too early for THK, and that THK needed more depositions to complete damages discovery."[20] *This simply is not so.*

The discovery cut-off date for fact discovery set by the Magistrate Judge's Order of June 30, 1992 was not a short date. Fact discovery was to close on October 29, 1993. Expert discovery was to close on December 15, 1993. The pre-trial order was originally due on January 31, 1994. Accordingly, standing alone, the discovery schedule set on June 30, 1992 cannot be viewed as short. And it cannot be so viewed, when one considers the fact that as of June 30, 1992, the case had already pended for approximately nineteen months.[21]

The sales data at issue was susceptible to stipulation and, was ostensibly so when discovery was open. Therefore, since the sales data would have been stipulated to in the ordinary course of trial preparation, there was no need for THK to be concerned about taking discovery on a matter that it reasonably expected the parties to stipulate to at the appropriate time. No matter what the discovery schedule, THK could not have foreseen that the sales data for third parties would not have been stipulated to, particularly given its *de minimis* nature.

Next, we turn to NSK's contention that "[p]rior to the Court's award of the[ ] sanctions against NSK, THK had created an atmosphere of distrust of NSK by *repeatedly* criticizing NSK for purportedly trying to delay the case and increase expense to THK...."[22] *This too is not so.* NSK's con-

18. "There were a series of eight meetings from 1988 to 1990 where[in] Mr. [Hiroshi] Teramachi met with the head of NSK Japan. Nothing came of it." Suit followed. Transcript of the January 19, 1993 proceedings before Judge Shadur, at 12. *See also,* Footnote 4, at 4, *"Memorandum In Support Of Plaintiffs' Motion For (1) Summary Judgment Of Attempted Price-Fixing And Patent Misuse; And (2) Injunctive Relief"* (filed August 27, 1993) (Case No. 93–1312, W.D.La.).

19. This conclusion was all the more inevitable in light of the fact that NSK waited until May 18, 1993 to notice-up the nineteen deponents, the identity of whom had been obtained by NSK from THK answers to NSK interrogatories sub-

mitted by THK to NSK in 1991. By June 30, 1993, NSK had only deposed two of the individuals identified in THK's interrogatory answers.

20. *"NSK's Opposition to THK's Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery,"* at 10.

21. The complaint was filed on October 17, 1990.

22. *"NSK's Opposition To THK's Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery "*, at 9 and 10.

duct alone has brought about its being sanctioned.

NSK has filed a plethora of overbroad discovery requests—none of which it could reasonably have expected to be successful. Whether discovery-related or otherwise, NSK's various written submissions reflect a propensity for distorting the record, the facts, court rulings, whatever, as well as, re-litigating matters previously ruled upon.[23] NSK's forum-shopping odyssey reflects its propensity for engaging in expensive distractions.[24]

On November 30, 1992, NSK sought leave of court to file amended answers, to join THK Japan as a party plaintiff, and to add substantive counterclaims alleging violations of federal and state antitrust law and common law tort causes of action. The motion was filed after two years of discovery. On June 4, 1993, the motion was denied by the Magistrate Judge's *Minute Order* of June 4, 1993, *to-wit:*

> Defendants' motion to add counterclaims is hereby denied. Opinion to follow.

On the same day, in the same Court but before a different District Judge, NSK filed *a five-count complaint*[25] against THK, THK Japan, and Mr. Hiroshi Teramachi essentially charging the same with monopolization and attempts to monopolize the linear guide market in the United States in violation of § 2 of the Sherman Act.[26] The complaint charged that THK's monopoly power had been achieved and maintained, not through lawful conduct or through lawful use of patent monopolies, but through defendants' unlawful efforts to fix prices for linear guides and to divide markets; deceptive, false, and unfair trade practices; disparagement of NSK products and services; tortious interference with NSK's business relations and expectations; misuse of patents; accumulation of blocking patents; sham predatory patent litigation; and threats of litigation to coerce defendants' price-fixing and market division schemes and to foreclose competitors from the market. According to the allegations, all of the complained of antitrust conduct occurred *"[f]rom at least as early as January 1988, until the commencement" of the present patent infringement suit on October 17, 1990.* On July 19, 1993, before issue was joined, NSK voluntarily dismissed its antitrust complaint.[27] By *Minute Order* dated July 22, 1993, the action was "dismissed without prejudice."[28]

On August 5, 1993, in the United States District Court for the Western District of Louisiana (Shreveport, Louisiana), NSK filed *a two-count complaint* against THK America, THK Japan, and Mr. Hiroshi Teramachi, charging them with unlawful restraint of trade by illegally fixing the prices of linear guides through threats of patent litigation and the actual commencement of same.[29] More specifically, the antitrust complaint charged that beginning as early as January

---

23. *See, e.g.,* the Magistrate Judge's September 17, 1991 *Order* limiting Document Request No. 2 of NSK's *First Set Of Requests (1–5) To Plaintiff THK America, Inc. For Production Of Documents* to the patents at issue. Due to NSK's propensity for re-litigating matters already ruled upon, the September 17th *Order* had to be re-affirmed by the Magistrate Judge's October 19, 1993 *Order. See also,* the Magistrate Judge's August 6, 1993 *Order.*

24. As of August 4, 1993, NSK had "expended in excess of one million dollars in defending the [present] patent infringement action and the[ ] litigation expenses [continue to] mount[ ]." "*Affidavit of Charles E. Miller,*" at 1 and 2, *attached as Exhibit N to,* "*Memorandum In Support Of Plaintiffs' Motion For (1) Summary Judgment Of Attempted Price–Fixing And Patent Misuse; (2) Injunctive Relief,*" Case No. 93–1312 (W.D.La. October 18, 1993). Perforce, the litigation costs for THK must have been about the same.

25. Case No. 93 C 3352 (N.D.Ill. Judge Kocoras).

26. Section 2 of the Sherman Antitrust Act punishes "[e]very person who shall monopolize, or *attempt to monopolize,* or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2 (emphasis added).

27. *See,* "*Notice of Dismissal Pursuant To Fed. R.Civ.P. 41(a)(1)(i)*" (filed July 19, 1993).

28. *See,* July 22, 1993 *Minute Order,* Case No. 93 C 3352 (N.D.Ill. Judge Kocoras).

29. *NSK Ltd. and NSK Corporation v. THK Co., Ltd., THK America, Inc., and Hiroshi Teramachi,* Civil Action No. 93–1312 "S" (W.D.La. Judge Walter) (filed August 5, 1993).

of 1988, Mr. Teramachi repeatedly proposed to THK's competitors in the linear guide market, including NSK, that they cooperate with THK in raising prices world-wide, including in the United States. The complaint charged further that Mr. Teramachi and THK used THK's patents as an integral part of their illegal price-fixing scheme. Injunctive and declaratory relief, as well as money damages, were sought.

On August 27, 1993, approximately 21 days after the complaint was filed and before THK Co., Ltd. (THK Japan) and Mr. Hiroshi Teramachi were ever served with service of process, NSK filed a *"Motion For (1) Summary Judgment Of Attempted Price–Fixing And Patent Misuse; And (2) Injunctive Relief."* Given the afore-recited antitrust allegations, NSK's filing of a threshold Rule 56 summary judgment motion predicated on the ground that THK Japan, THK America, and Mr. Hiroshi Teramachi's allegedly blatant efforts at joint monopolization constituted *per se* violations of § 2 of the Sherman Act was pure litigation gamesmanship. It would have been most extraordinary had the Louisiana district court seriously entertained a threshold Rule 56 summary judgment motion predicated on the theory of a *"§ 2 per se"* antitrust violation.[30] Indeed, in light of the outstanding decisional law, including the controlling authority of the United States Supreme Court, Judge Shadur of this Court opined in open-court that "NSK's ["§ 2 *per se* antitrust violation"] position can't fairly be said in candor to meet the ... objective good faith [requirement] ... built into Rule 11."[31] In any event, over NSK's objections, the Louisiana antitrust action was transferred back to the Northern District of Illinois.[32]

In the transferred case, NSK respectfully requested The Honorable Milton I. Shadur of the United States District Court for the Northern District of Illinois (Eastern Division) to "expeditiously rule [that] THK's and [Mr.] Teramachi's demands for price-fixing of the bearing industry constitute[d] a *per se* violation of Section 2 of the Sherman Act."[33] He refused to do so.[34]

It is significant to note that NSK has not been successful on any key motion filed by it, or on any defense advanced by it in response to a key motion filed by THK. And its lack of success has not been limited to this immediate Court. This factual scenario makes NSK's charge that THK has somehow "poisoned" the Court against NSK ring hollow. The fact of the matter is that NSK has advanced very few meritorious motions or defenses thereto and, as a consequence, has lost a substantial number of battles on several different fronts.

█ Finally, a recent illustration of NSK's propensity for vexatiously increasing THK's litigation expenses is its desire to have the settlement conferences called for under Rule 5(A) of the General Rules of the United States District Court for the Northern District of Illinois video-taped.[35] Rule 5(A) is the Court's *"Standing Order Establishing Pretrial Procedure."* Paragraph 4 of the *Standing Order* reads in pertinent part as follows:

> Counsel and the parties are directed to conduct a thorough exploration of the prospects of settlement before undertaking the extensive labor of preparing the [Pretrial] Order.

---

**30.** *See generally,* Transcript of the February 23, 1994 proceedings before Judge Shadur.

**31.** Transcript of the April 8, 1994 proceedings before Judge Shadur, at 9 (N.D.Ill. Case No. 93 C 7032).

**32.** *See,* October 18, 1993 *"Report and Recommendation"* of Magistrate Judge Roy S. Payne, Case No. 93–1312, wherein the Judge observed that the Western District of Louisiana had absolutely "no connection whatsoever to th[e] [antitrust] dispute." The primary motivation for selecting that forum was the favorable case law of the Fifth Circuit Court of Appeals. *Id. See also,* the

District Judge's *"Order of Transfer"* of November 8, 1993.

**33.** *"Supplemental Citation Of Authority In Support Of Plaintiff's Motion For (1) Summary Judgment Of Attempted Price–Fixing And Patent Misuse; and (2) Injunctive Relief",* at 3 (N.D.Ill., February 11, 1994) (Case No. 93 C 7032).

**34.** *See generally,* Transcript of the April 8, 1994 proceedings before Judge Shadur.

**35.** *See generally,* THK's *"Motion To Direct Defendants To Proceed With Settlement Discussions."*

By letter dated September 23, 1994, NSK charged THK with violating the above-quoted paragraph. It is a bogus charge. No where in any of its correspondence with THK does NSK ever indicate that settlement is actually possible. In any event, if THK overlooked the rule, NSK remained free to initiate settlement. The rule does not require that settlement negotiations first be initiated by plaintiffs. Any party may initiate settlement. NSK's September 23d response was at worst petty and at best sanctionable—and in this regard we shall accommodate NSK.

By FAX dated September 26, 1994, NSK informed THK that it wanted to bring a videographer to the settlement conference. A preposterous proposal!?! Settlement discussions are not admissible evidence at trial. NSK's proposal is inconsistent with the letter and the spirit of the federal rules of evidence. No reason exists for NSK's video-taping desire, except for harassment which will not be tolerated.

By FAX dated September 27, 1994, NSK states that a video record is necessary in view of THK counsel's past distrustful conduct. The record before the Court belies the charge. In any event, if NSK was concerned about attorney misconduct, it could—as Paragraph 4 permits—have requested the Magistrate Judge to have the settlement conference held before another Judge of this Court—for example, the Chief Magistrate Judge. No such request was ever made. The fact is that NSK is not seriously interested in participating in settlement negotiations, or it would not engage in these shenanigans, or establish these bogus hurdles.

Around 4:15 p.m., on October 4, 1994, "*NSK's Confirmation Of Its Continuing Willingness To Proceed With Settlement Discussions (With Or Without A Video); And Request To Dismiss As Moot THK's Motion To 'Direct Defendants To Proceed' With Settlement Discussions*" was filed with the Magistrate Judge. It was in response to THK's "*Motion To Direct Defendants To Proceed With Settlement Discussions*" filed on October 3d. Hearing on THK's motion was set for October 5th.

NSK's response is absolute garbage. Among other things, it suggests that THK has petitioned for and obtained *ex parte* rulings from the Court. There is no factual basis for such a representation, and we invite NSK counsel to point out any *ex parte* rulings issued by the Court.

Upon filing its response, NSK believed that it had mooted THK's motion. Consequently, it **unilaterally decided** not to appear at the October 5th hearing on the motion. It apparently did not advise THK that the matter was resolved and that there was no need for any one to appear at the hearing. Consequently, THK (and the Court) appeared at the hearing.

In Chicago, attorneys do not tell federal judges whether hearings set by the Court will or will not proceed. Hearings set by judges do not proceed at the pleasure of attorneys. There are Judges of this Court who have held attorneys in contempt of court for less. In any event, at our request, NSK counsel eventually appeared at the hearing telephonically.

NSK's position regarding video-taping a settlement conference is untenable. Accordingly, THK is awarded its reasonable attorneys' fees necessarily incurred in connection with the filing of its "*Motion To Direct Defendants To Proceed With Settlement Discussions.*"

The record reveals that the October 7th settlement conference between the parties is for NSK nothing but a perfunctory adherence to Paragraph 4 of the Court's *Standing Order*, and more likely than not is not reflective of a *bona fide* desire to settle the case. Accordingly, the October 7th settlement conference is hereby struck. If the parties are truly desirous of settling, they know full well how to approach each other, and remain free to do so. However, we relieve them of perfunctory adherence to Paragraph 4.

**Accordingly, it is adjudged, decreed, and ordered**

1. THK's "*Motion To Enforce A Stipulation Or, Alternatively, To Obtain Selected Damages–Related Discovery*" is granted. The Stipulation is hereby enforced, and the unrelated, improper, and unethical condition "tagged on" to the stipulation is hereby struck.

**2.** THK's *"Motion To Direct Defendants To Proceed With Settlement Discussion"* is granted in that we concur with THK that NSK has vexatiously interposed bogus hurdles to a settlement conference between the parties.

**3.** We conclude from the written submissions filed that the October 7th settlement conference would be nothing more than a perfunctory adherence to the requirements of Paragraph 4 of the *Standing Order* of this Court and relieve both parties of such a perfunctory gesture. The October 7th settlement conference between the parties is hereby struck.

**4.** The video-taping position taken by NSK is wholly without merit. This bogus issue has vexatiously increased THK's attorneys' fees. Therefore, THK is hereby awarded its reasonable attorneys' fees incurred in connection with the filing of its *"Motion To Direct Defendants To Proceed With Settlement Discussions."* [36]

**So Ordered.**

**36.** Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the parties are given 10 days after being served with a copy of the Order to file exceptions thereto with The Honorable Charles R. Norgle, Sr. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's Order. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See also, The Provident Bank v. Manor*

*Steel Corporation,* 882 F.2d 258, 261 (7th Cir. 1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's Order).